UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| NEIDY STEPHANIE <br> AGUILAR GUERRA, <br><br> Petitioner, <br><br> v. <br><br> KEVIN JOYCE, <br> *Sheriff of Cumberland County*, et al. <br><br> Respondents. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) 2:25-cv-00534-SDN <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**<u>ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER</u>**

## I.    Background

Petitioner Neidy Stephanie Aguilar Guerra is a 19-year-old Guatemalan citizen who entered the United States without inspection on February 19, 2023. *See* ECF No. 1 at 1–2. On February 20, 2023, U.S. Customs and Border Protection ("CBP") initiated removal proceedings against her and issued her a Notice to Appear in immigration court.[1] *Id.* at 4. For a short time, she was placed in the custody of the Office of Refugee Resettlement as an unaccompanied minor. *Id.* at 5. In March 2023, she was transferred to the care of relatives in Virginia pursuant to her status as an unaccompanied minor. *Id.* She has resided in Virginia and Connecticut since 2023, *id.*, and is attending high school

---

[1] The February 20, 2023, Notice to Appear indicated that Ms. Aguilar Guerra is "a[] [noncitizen] present in the United States who has not been admitted or paroled." ECF No. 1-1 at 2. Petitioner asserts, on information and belief, that this Notice was not filed with any immigration court. ECF No. 1 at 5.

in New Haven, Connecticut, *id*. at 1. She currently is detained at Cumberland County Jail in the State of Maine.[2] *Id*. at 2–3.

Around August 2024, Ms. Aguilar Guerra was arrested in relation to unspecified allegations of improper conduct. *Id*. at 5. She was held for several weeks in pretrial detention before being released on a promise to appear. *Id*. On October 6, 2025, U.S. Immigration and Customs Enforcement ("ICE") detained Ms. Aguilar Guerra while she was traveling to New Haven Superior Court to resolve issues surrounding her criminal case. *Id*. at 6. They processed her at the Hartford, Connecticut ICE Field Office before transporting her to Cumberland County Jail, where she remains detained in ICE custody. *Id*. That same day, October 6, 2025, the U.S. Department of Homeland Security ("DHS") issued her a second Notice to Appear, indicating that she is "a[] [noncitizen] present in the United States who has not been admitted or paroled." ECF No. 1-3 at 2.

On October 23, 2025, Ms. Aguilar Guerra filed a verified petition for a writ of habeas corpus under 28 U.S.C. § 2241, seeking, in part, a declaration that her detention is unlawful. ECF No. 1 at 12. The same day, she also filed the instant motion for a temporary restraining order ("TRO"), seeking to enjoin Respondents from transferring her outside of the District of Maine. ECF No. 2.

In her habeas petition, Ms. Aguilar Guerra argues that she is entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a) because she is not properly detained or removable under 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(c). ECF No. 1 at 10. She urges this Court to

---

[2] Because Ms. Aguilar Guerra currently is detained in Maine, I find that this Court retains jurisdiction over the habeas matter. *See Ozturk v. Trump*, 777 F. Supp. 3d 26, 35 (D. Mass. 2025) ("[A]s a general matter, a habeas petitioner must file his or her petition in the district of confinement."). And although 8 U.S.C. § 1252(b)(9) limits judicial review in immigration proceedings, it "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (quotation modified).

issue a writ of habeas corpus directing Respondents to release her immediately, or in the alternative, she asks that this Court conduct its own bail hearing pursuant to its inherent authority. *Id*. at 12. If Petitioner's argument is true, mandatory detention without a bond hearing would violate her Fifth Amendment rights to due process. *Id*. at 10–12. In her motion for a TRO, she also urges the Court to enjoin the Government from transferring her outside the jurisdiction while it considers the merits of her habeas petition, in part because transfer would frustrate her access to established counsel. ECF No. 2 at 2–3.

## II. Discussion

In determining whether to grant a motion for a temporary restraining order, I must consider the following four factors:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

*Calvary Chapel of Bangor v. Mills*, 459 F. Supp. 3d 273, 282 (D. Me. 2020) (alteration in original) (quoting *Esso Standard Oil Co. (P.R.) v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006)). The movant bears the burden of showing the factors weigh in their favor. *Esso*, 445 F.3d at 18. "[I]f the moving party cannot demonstrate that [they are] likely to succeed in [their] quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002).

### A. Likelihood of Success on the Merits

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law," U.S. Const. amend. V, and applies to noncitizens in immigration proceedings, *Reno v. Flores*, 507 U.S. 292, 306 (1993). Ms. Aguilar Guerra argues that she is being deprived of her due process protections under the

3

Fifth Amendment because she is unable to seek a bond hearing to which she is entitled under section 1226(a).

There are five statutory provisions which may be at issue here. The first is 8 U.S.C. § 1225(b)(1), which governs expedited removal of noncitizens who have not been continuously physically present in the country for more than two years prior "to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). Because Ms. Aguilar Guerra entered the country more than two years before she was detained by ICE in October 2025, ECF No. 1 at 2, this Court finds that section 1225(b)(1) likely does not apply.

Under 8 U.S.C. § 1225(b)(2)—the second statutory provision at issue—a noncitizen "who is an applicant for admission"[3] *shall* be detained for a removal proceeding "if the examining immigration officer determines that [the noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Ms. Aguilar Guerra argues that she has been present in the United States for more than two years and has not been deemed to be "seeking admission," *see* ECF No. 1-3 at 2 (Second Notice to Appear), and as such cannot be mandatorily detained under this subsection, *see* ECF No. 1 at 7. Based upon my reasoning in similar cases, I find that section 1225(b)(2) likely also does not apply to Petitioner because she has been present in the United States for more than two years and is not considered by DHS to be seeking admission. *See Chogllo Chafla v. Scott*, No. 2:25-CV-00437, 2025 WL 2688541, at *5–9 (D. Me. Sept. 22, 2025); *id.* at *5 (collecting cases holding the same).

---

[3] An "applicant for admission" is defined as "[a] [noncitizen] present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including a[] [noncitizen] who is brought to the United States after having been interdicted in international or United States waters) . . . ." 8 U.S.C. § 1225(a)(1).

The third statutory provision, 8 U.S.C. § 1182(d)(5)(A), governs noncitizens who have been "paroled" into the country after inspection at the border. Upon her counsel's information and belief, Ms. Aguilar Guerra was not paroled into the country in 2023, ECF No. 1 at 7, and thus is not subject to revocation of parole to "be returned to the custody from which [she] was paroled." 8 U.S.C. § 1182(d)(5)(A). Therefore, this statutory subdivision likely does not apply.

The fourth relevant statutory provision, 8 U.S.C. § 1226(c), subjects certain noncitizens to mandatory detention based on alleged, charged, or convicted criminal acts. 8 U.S.C. § 1226(c)(1)(E)(ii) requires detention for an "inadmissible" person "who is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E)(ii). Although the specific circumstances of her arrest are not provided in the record, Ms. Aguilar Guerra maintains that she has not been charged with a crime "that results in death or serious bodily injury to another person," and thus does not satisfy the conditions of that statutory subsection. ECF No. 1 at 8. As such, because I must construe the facts in the verified petition as true, I find that 8 U.S.C. § 1226(c)(1)(E)(ii) likely does not apply. *See Chogllo Chafla*, 2025 WL 2688541, at *1 n.2 (construing as true facts derived from "Petitioners' *verified* petitions" (emphasis added)).

Similarly, 8 U.S.C. § 1226(c)(1)(A) mandates detention for any inadmissible person who violates 8 U.S.C. § 1182(a)(2), which in turn encompasses "any [noncitizen] convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude," among other crimes. Ms.

5

Aguilar Guerra contends "she has not been convicted of any crime that triggers such detention." ECF No. 1 at 7. Thus, for the same reason as previously stated, I conclude that 8 U.S.C. § 1226(c)(1)(A) likely does not apply.

The fifth relevant statutory provision, 8 U.S.C. § 1226(a), entitles a noncitizen to procedural protections that are not afforded under the other parts of the statute, including a bond hearing. *See* 8 C.F.R. § 236.1 (2025) (enumerating the procedural protections under section 1226(a)). Petitioner argues that she is subject to detention, if at all, under section 1226(a). ECF No. 1 at 8. As affirmed by the First Circuit, a noncitizen subject to detention under section 1226(a) is entitled to a custody redetermination hearing—otherwise referred to as a bond hearing—with certain protections. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 38 (1st Cir. 2021). At bottom, because the other relevant statutory subdivisions do not apply to Ms. Aguilar Guerra's circumstances—as predicated on the facts in the verified petition—I conclude that section 1226(a) likely is the proper statute to apply because she is a noncitizen continuously present in the country for more than two years and is not seeking admission. *See Chogllo Chafla*, 2025 WL 2688541, at *12. If section 1226(a) governs, then Ms. Aguilar Guerra is likely to succeed in her claim that she is entitled to a bond hearing under that statute.

Because I determine that section 1226(a) likely applies, I also find it is likely Petitioner's due process rights were violated when she was arrested on October 6, 2025, and held without a bond hearing. It is undisputed that noncitizens have a liberty interest in their freedom. *See Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993))). "To protect that interest, due process requires notice and a hearing, prior to any re-arrest, at

6

which hearing the individual is afforded the opportunity to advance their arguments as to why their release should not be revoked." *Rosado v. Figueroa*, No. CV 25-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), at *12, *R&R adopted sub nom. Rocha Rosado v. Figueroa*, No. CV-25-02157, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025). The record indicates that Ms. Aguilar Guerra did not have a hearing before she was detained in October 2025. Thus, it is likely that she has been denied the process that she was due, which in this case would be an opportunity to be heard at a bond hearing while her removal proceedings are ongoing.[4]

Based on the claims in her verified petition, I conclude that Ms. Aguilar Guerra has a likelihood of success on her Fifth Amendment claim.

### B. Potential for Irreparable Harm

Ms. Aguilar Guerra asserts that transfer outside of the District of Maine could strip this Court of jurisdiction and inhibit her right to access counsel, which would constitute irreparable harm. ECF No. 3 at 2–3. I conclude that absent a temporary restraining order, Ms. Aguilar Guerra is at risk of facing irreparable harm.

### C. Balance of the Equities and Public Interest

"A plaintiff seeking a preliminary injunction must establish that . . . the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "The crux of the balance of equities inquiry is whether 'the balance of equities so favors the movant that justice requires the

---

[4] Petitioner's claim that her due process rights are being violated is bolstered by the fact that a recently issued opinion by the Board of Immigration Appeals ("BIA") holds that "Immigration Judges lack authority to hear bond requests or to grant bond to [noncitizens] [under section 1226(a)], like the respondent, who are present in the United States without admission." *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 225 (B.I.A. 2025). This opinion would preclude Petitioner from seeking a bond hearing before an Immigration Judge while her removal proceedings are ongoing. I have previously concluded that *Yajure Hurtado* is both "unavailing" and not binding on this Court. *Chogllo Chafla*, 2025 WL 2688541, at *7–8.

court to intervene to preserve the status quo until the merits are determined.'" *Grant v. Trial Ct.*, 784 F. Supp. 3d 475, 490 (D. Mass. 2025) (quoting *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)).

It is evident that Petitioner faces a risk of deprivation of her rights if she is foreclosed from having a bond hearing. The harm to the Government is less pronounced. Although the Government has a legitimate interest in the "prompt execution of removal orders," *Hernandez-Lara*, 10 F.4th at 32, "[t]here is no discernable harm that will come to Respondents by granting Petitioner's requested relief, nor would this Court's ruling interfere with ICE's proper enforcement of U.S. immigration laws," *Francisco T. v. Bondi*, No. 25-CV-03219, 2025 WL 2629839 (D. Minn. Aug. 29, 2025), at *4. Rather, "such unnecessary detention imposes substantial societal costs." *Hernandez-Lara*, 10 F.4th at 33.

The equities here weigh in favor of granting Ms. Aguilar Guerra an opportunity for her habeas petition to be heard on the merits.

### III.  Conclusion

I hereby **ORDER** that the Respondents in this matter are **ENJOINED** from removing Ms. Aguilar Guerra from the District of Maine pending further order from this Court. Ms. Aguilar Guerra's motion for a temporary restraining order is **GRANTED**. ECF No. 2.

**SO ORDERED.**

Dated this 23rd day of October, 2025.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**
